# Richmond.

## JONES v. ALBERT.

### January 13, 1916.

#### Absent, Cardwell, J.

1. REFORMATION—*Exchange of Lands—Mutual Mistake—Case in Judgment—Deficiency in Land.*—Upon an exchange of lands, the parties agreed that there should be deducted from one of the tracts 115 acres sold to D., and the owner of that tract guaranteed that the residue of the tract should contain 326 acres. The parties met upon the land and set aside for D. a boundary supposed to contain 115 acres. Upon survey, the boundary set apart to D. contained only 101 acres and the residue of the tract 371. The deficiency in D.'s tract was not discovered until after the deed for the 371 acres had been executed and delivered, and the grantee refused to make good the deficiency or to pay the value thereof, and this suit was brought by the grantor of the 371 acres against his grantee to have his deed reformed and compel the grantee to convey to him the deficiency in the land sold to D. or to pay the value thereof.

   *Held:* It was a case of mutual mistake, clearly shown, and the complainant was entitled to the relief prayed.

2. VENDOR AND PURCHASER—*Contracts—Sale of Land—Sale by Acre—Presumption.*—Every sale of real estate, where the quantity is referred to in the contract and where the language of the contract does not plainly indicate that the sale was intended to be in gross, is presumed to be a sale by the acre. While contracts of hazard are not invalid, courts of equity do not regard them with favor. The presumption is against them, and while such presumption may be repelled, it can only be effectually done by clear and cogent proof, and the burden is always upon the party alleging a contract of hazard.

Appeal from a decree of the Circuit Court of Montgomery county. Decree for the complainant. Defendant appeals.

*Affirmed.*

The opinion states the case.

*Roop & Phlegar* and *Johnston & Izard,* for the appellant.

*Harless & Colhoun,* for the appellee.

Keith, P., delivered the opinion of the court.

Albert was the owner of a farm near Shawsville, Montgomery county, Virginia, and M. Wiley Jones owned a farm in Giles county. They entered into negotiations looking to an exchange of their farms, and an agreement was entered into as follows:

"This is to certify that I, M. Wiley Jones, agree to give my farm, two hundred and twenty-one acres, and hay and oats to J. A. Albert for his farm, hay, oats and straw and shucks now in barn, he, J. A. Albert, guaranteeing that there will be three hundred and twenty-six acres, after taking off one hundred and fifteen acres, more or less, to W. T. Doosing. It is also agreed that all over $3,200.00 the land sold to Doosing brings shall be repayable to M. W. Jones in cash. It is also agreed that the said J. A. Albert is to give me his lot of entrance at and on the macadam road even for my lot at Eggleston on Norfolk and Western Railway that is fenced with wire and locust posts. It is further agreed that we employ Judge A. A. Phlegar to examine the title for each of the farms and the titles shall be cleared, and we each agree to pay one-half the costs of Judge Phlegar's fee. It is further agreed that J. A. Albert shall have reasonable time to move present growing crop of corn and fodder, which shall be done without damage to the farm herein sold or traded to said Jones, and seeding possession to be given to said Jones. It is further agreed that no wood, rails, or such articles shall be moved from either farm, and said Jones assumes the John Lucado contract for clearing twelve acres of land, more or less.

"Given under our hands this 20th day of September, 1910.

(Signed)    "M. W. Jones,

"J. A. Albert."

In the execution of this contract Albert and Jones, on the
6th of October, 1910, met on Albert's farm, and after agreeing
upon a boundary supposed to contain at least 115 acres and
setting it aside for Doosing, as agreed in the contract, they pro-
ceeded to have a surveyor run off the residue of the farm, which
when the acreage was ascertained proved to be three hundred
and seventy-one acres and twenty-one poles; after the deed
from Albert to Jones, dated October 20, 1910, had been exe-
cuted and delivered it was ascertained that the boundary set
apart for Doosing contained only one hundred and one acres
and twenty-six poles, instead of one hundred and fifteen acres,
as provided for in the contract, thus showing a deficiency of
thirteen acres and one hundred and thirty-four poles of the
amount agreed upon between Albert and Jones which should
be set apart for Doosing. When this fact was ascertained
Albert called the attention of Jones to the shortage and de-
manded that the deed should be corrected and that Jones should
make good to Albert the deficiency in the boundary cut off for
Doosing at the rate of $27.82 per acre, but Jones refused this
request and thereupon this suit was brought, and the prayer
of the bill is that Jones may be compelled to convey to Albert
the thirteen acres and one hundred and thirty-four poles short-
age in the lands reserved by the terms of the contract for Doos-
ing, or make a reasonable compensation therefor and for such
other and further relief as the case may require.

Jones answered the bill denying that there was any mistake
and claiming that he purchased the tract of land by an ascer-
tained boundary, and that it was a sale and purchase in gross
and not by the acre.

Upon this issue evidence was taken and the circuit court
held "that the contract of September 20, 1910, of the exchange
of farms between the parties guaranteed on the part of plaintiff
to the defendant not less than 326 acres of land, the plaintiff
reserving out of any excess over and above said 326 acres, 115
acres more or less for W. T. Doosing, which reservation was

subordinate to said guarantee; that in running the line which was supposed would reserve the 115 acres for the said Doosing it proved to contain, by actual survey, only 101 acres and twenty-six poles, or a shortage of thirteen acres and 134 poles; that the defendant acquired, by actual survey, 371 acres and twenty-one poles, or forty-five acres and twenty-one poles above the amount guaranteed, which said land was conveyed to the defendant by deed of plaintiff on October 20, 1910, and prior to the ascertainment of the shortage of thirteen acres and 134 poles in the approximation of the 115-acre boundary laid off and reserved for the said Doosing.

"The court is of the opinion that the said shortage of thirteen acres and 134 poles in the acreage of the boundary laid off for the said Doosing was a mutual mistake of fact, for the correction of which the plaintiff is entitled to reformation of his deed of October 20, 1910, to defendant in conformity to the prayer of the bill; therefore, the court doth adjudge, order and decree that the plaintiff do recover of the defendant thirteen acres and 134 poles of land to be taken from that portion of defendant's land immediately adjoining the 101 acres and twenty-six poles conveyed by plaintiff to W. T. Doosing, or in lieu thereof the defendant may retain said land and pay to the plaintiff its value at the price of $25.00 per acre, with interest thereon from the 24th day of August, 1912.

"And the defendant being put upon his election, appeared by counsel and elected to retain the land and pay to the plaintiff therefor at said rate of $25.00 per acre; therefore, it is adjudged, ordered and decreed that the plaintiff do recover of the defendant the sum of $345.93 with interest thereon from the 24th day of August, 1912, and his costs in this behalf expended." From that decree an appeal was allowed upon the petition of Jones.

We think the decree of the circuit court is plainly right. Whether or not the residue of the contract between Albert and Jones was one of hazard or by the acre it is unnecessary for us

to decide. By the contract Jones was to get not less than 326 acres; as a matter of fact, he got 371 acres. But by this contract, which is the basis of this suit and which is executed by Jones as well as Albert, it is agreed by both that 115 acres were to be assigned to Doosing. A survey was made by which it was believed that 115 acres had been set apart to Doosing, when in point of fact it turned out that he received only 101 acres and twenty-six poles. There is no suggestion of fraud in the case, nor was there any such delay, negligence or laches in the discovery of the deficiency in acreage assigned to Doosing as would affect the right of Albert to come into court and obtain relief, and we think the decree appealed from was in entire harmony with the decisions of this court upon the subject.

In *Watson* v. *Hoy,* 28 Gratt. (69 Va.) 698, the opinion by Judge Burks, after an exhaustive investigation of the subject and the authorities bearing upon it, states the law as follows: "While contracts of hazard in such cases are not invalid, courts of equity do not regard them with favor. The presumption is against them, and while such presumption may be repelled, it can only be done by clear and cogent proof."

In *Benson* v. *Humphreys,* 75 Va. 196, Judge Christian states the law as follows: "Every sale of real estate, where the quantity is referred to in the contract, and where the language of the contract does not plainly indicate that the sale was intended to be a sale in gross, must be presumed to be a sale per acre;" and reaffirms the rule, that "while contracts of hazard are not invalid, courts of equity do not regard them with favor. The presumption is against them, and while such presumption may be repelled, it can only be effectually done by clear and cogent proof;" that "the burden of proof is always upon the party asserting a contract of hazard, for the presumption always being in favor of a sale per acre, a sale in gross, or contract of hazard, must be clearly established by the facts;" that "whether it be a contract in gross or for a specific quantity depends, of course, upon the intention of the contracting parties,

to be gathered from the terms of the contract and all the facts and circumstances connected with it. But in interpreting such contracts the court, not favoring contracts of hazard, will always construe the same to be contracts of sale per acre, wherever it does not clearly appear that the land was sold by the tract and not by the acre."

We shall refer, without discussion or quotation, to several more recent decisions of this court reaffirming the doctrine of *Watson* v. *Hoy* and *Benson* v. *Humphreys,* to-wit: *Boschen* v. *Jurgens,* 92 Va. 756, 24 S. E. 390; *Hull* v. *Watts,* 95 Va. 10, 27 S. E. 829; *Rogers* v. *Pattie,* 96 Va. 498, 31 S. E. 897; *Emerson* v. *Stratton,* 107 Va. 303, 58 S. E. 577; *Epes* v. *Saunders,* 109 Va. 99, 63 S. E. 428, 132 Am. St. Rep. 904.

For the foregoing reasons we are of opinion that there is no error in the decree complained of and it is, therefore, affirmed.

*Affirmed.*